Fischer, J.
*287 {¶ 1} In this case, we are presented with the issue whether the defense of blackout is an affirmative defense that must be proved by the defendant by a preponderance of the evidence. We conclude that blackout is an affirmative defense pursuant to R.C. 2901.05(D)(1)(b) and that requiring a defendant to prove this affirmative defense by a preponderance of the evidence does not violate the defendant's right to due process. Accordingly, we reverse the judgment of the Tenth District Court of Appeals and remand the cause to that court for consideration of the remaining assignments of error.
I. PROCEDURAL HISTORY
{¶ 2} The Franklin County Grand Jury indicted appellee, Darin K. Ireland, on one count of felonious assault in violation of R.C. 2903.11. Ireland pleaded not guilty, and the case proceeded to a jury trial.
{¶ 3} During trial, Ireland called James P. Reardon, Ph.D., a forensic psychologist, as an expert witness. Prior to trial, but after the incident, Dr. Reardon had diagnosed Ireland with posttraumatic stress disorder ("PTSD"). Dr. Reardon opined that Ireland had experienced "a dissociative episode" due to his PTSD and that Ireland's "consciousness, his memory, his decision-making capability for those instants, those moments, [were] compromised." Dr. Reardon asserted that Ireland *288 was "acting automatically in a dissociative episode."
{¶ 4} Ireland argued that Dr. Reardon's testimony supported his request for the following blackout instruction:
*288 BLACKOUT : Where a person commits an act while unconscious as in a blackout due to disease or injury, such an act is not a criminal offense even though it would be a crime if such act were the product of the person's volition.
If you have a reasonable doubt whether the defendant was conscious at the time of such act, you must find that he is not guilty. If you find that the defendant was conscious, such finding does not relieve the state of its burden of establishing by the required weight of the testimony that the act was knowingly committed.
(Capitalization and boldface sic.)
{¶ 5} The state objected to Ireland's request for the blackout jury instruction, arguing that the instruction was not warranted. The state asserted that Ireland may have been voluntarily intoxicated at the time of the incident and that a blackout defense was therefore precluded. The state argued that if the trial court did provide the jury with a blackout instruction, the instruction should state that blackout is an affirmative defense. Ireland objected and argued that it would be improper to instruct the jury that the defendant had the burden of proving the blackout defense, because the standard jury instruction on the blackout defense does not include affirmative-defense language and the blackout defense specifically addresses the concept of criminal liability under R.C. 2901.21. See Ohio Jury Instructions , CR Section 417.07 (2008). Ireland maintained that the two instructions could not be reconciled.
{¶ 6} The trial court gave the jury the standard blackout instruction but first instructed the jury that blackout is an affirmative defense:
The burden of going forward with the evidence of blackout and the burden of proving an affirmative defense is upon the defendant. He must establish such a defense by a preponderance of the evidence.
* * *
If the defendant fails to establish the defense of blackout, the State still must prove to you beyond a reasonable doubt all the elements of the crime charged.
Where a person commits an act while [unconscious], as in a coma, blackout, or convulsion due to heart failure, disease, sleep, or injury, such an act is not a criminal offense even though it would be a crime if such act were the product of a person's will or volition.
If you have a reasonable doubt whether the defendant was conscious at the time of such act, you must find that he is not guilty. If you find that *289 the defendant was conscious, such finding does not relieve the State of its burden of establishing by the required weight of the testimony that the act was knowingly committed.
* * *
Reflexes, convulsions, body movements during unconsciousness or sleep and body movements that are not otherwise a product of the act's [sic, actor's] will or volition are involuntary acts.
*289 {¶ 7} After deliberations, the jury found Ireland guilty of felonious assault. The trial court sentenced Ireland to six years of imprisonment.
{¶ 8} Ireland appealed, raising five assignments of error. He first asserted that the trial court committed structural error by instructing the jury that blackout is an affirmative defense. Addressing Ireland's structural-error argument, the state argued that blackout is an affirmative defense and that the trial court properly instructed the jury that Ireland had the burden of proving his blackout defense by a preponderance of the evidence.
{¶ 9} The Tenth District Court of Appeals held that the trial court committed structural error by instructing the jury that Ireland had the burden of proving his blackout defense. The appellate court determined that pursuant to the plain language of R.C. 2901.21(A), voluntariness is an essential element of a criminal offense. "[H]aving found that the state constitutionally bears the burden of proving beyond a reasonable doubt that the defendant engaged in a voluntary act," the court could not "agree that the defendant must prove by a preponderance of the evidence that his or her actions were involuntary." 2017-Ohio-263, 111 N.E.3d 468, ¶ 39. The appellate court further determined that Ireland's blackout defense was not an affirmative defense because the "issue of voluntariness is not an excuse or justification," id. at ¶ 40, and "a defense challenging voluntariness does not involve evidence peculiarly within the knowledge of the accused," id. at ¶ 41. The appellate court reversed Ireland's conviction and deemed his remaining assignments of error moot.
{¶ 10} The state appealed, and we accepted review of the state's sole proposition of law: "The defense of blackout or automatism is an affirmative defense that must be proven by a defendant by a preponderance of the evidence, because it involves an excuse or justification peculiarly within the knowledge of the accused, on which the accused can fairly be required to adduce supporting evidence." See 150 Ohio St.3d 1451, 2017-Ohio-8136, 83 N.E.3d 938.
II. ANALYSIS
{¶ 11} In this case, we are presented with three issues: (1) Under R.C. 2901.05(D)(1)(b), is "blackout" an affirmative defense that the defendant must *290 prove by a preponderance of the evidence? (2) Pursuant to R.C. 2901.21(A), is voluntariness an essential element of a criminal offense? And (3) does requiring the defendant to prove an affirmative defense that also challenges the state's evidence that the act was voluntary shift the burden of proof from the state to the defendant in violation of the defendant's right to due process? Because these issues are questions of law, we conduct a de novo review. See State v. Codeluppi , 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 9.
A. Defense at Issue
{¶ 12} As an initial matter, it is helpful to determine which defense is at issue in this case. The state's proposition of law uses the term "automatism." Ireland first introduced the term "automatism" in his brief to the Tenth District Court of Appeals. Ireland used the term "automatism" interchangeably with the term "unconsciousness" and argues that the two terms are synonymous. The appellate court appears to have implicitly adopted Ireland's interchangeable usage. See 2017-Ohio-263, 111 N.E.3d 468, at ¶ 27 and fn. 4.
{¶ 13} Ireland, however, did not assert "automatism" as a defense at the trial level, and the term does not appear in R.C. 2901.05 or in the jury instruction provided by the trial court. Regardless of whether *290 "automatism" is synonymous with "unconsciousness," the defense of blackout and the instructions relating to blackout are the only issues before this court. To the extent that an automatism defense is distinct from the blackout defense, arguments regarding an automatism defense are not properly before us at this time.
1. R.C. 2901.05(D)(1)(b) and blackout
{¶ 14} Under Ohio law, an affirmative defense is either a "defense expressly designated as affirmative," R.C. 2901.05(D)(1)(a), or a "defense involving an excuse or justification peculiarly within the knowledge of the accused, on which the accused can fairly be required to adduce supporting evidence," R.C. 2901.05(D)(1)(b). The General Assembly did not expressly designate blackout as an affirmative defense; thus, R.C. 2901.05(D)(1)(a) is not at issue in this case.
{¶ 15} The court of appeals reversed Ireland's conviction partly because it determined that blackout does not meet the definition of "affirmative defense" provided in R.C. 2901.05(D)(1)(b).
{¶ 16} The state contends that Ireland's defense is not actually blackout but the functional equivalent of a "diminished capacity" defense, which Ohio does not recognize as a valid defense. See State v. Fulmer , 117 Ohio St.3d 319, 2008-Ohio-936, 883 N.E.2d 1052, ¶ 66 ("Our jurisprudence definitively states that the partial defense of diminished capacity is not recognized in Ohio"). However, the state did not object on this basis in the trial court. The state had "no objection" to Ireland's calling Dr. Reardon as an expert witness, affirmatively told the trial court that it *291 was not requesting that the court strike Dr. Reardon's testimony, and agreed that there was "no objection to anything on the standards." The state did object to the defense-proposed blackout instruction, even as an affirmative defense, only because it argued that there was no evidence that Ireland had blacked out. The state also did not argue in the court of appeals that Ireland was presenting the equivalent of a diminished-capacity defense. The state's actions go beyond a simple forfeiture of the argument that Ireland raised a diminished-capacity defense. See State v. Rogers , 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 21 (forfeiture is the failure to timely assert a right or object to an error). The state, at the trial level, intentionally declined to assert any argument beyond the argument that blackout was not supported by the evidence; therefore, the state waived the argument that Ireland's blackout defense was actually a diminished-capacity defense. See id. at ¶ 20 (waiver is the intentional relinquishment or abandonment of a known right). Thus, we will not address the state's argument regarding diminished capacity in this case. See State v. Quarterman , 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15-16 ; United States v. Olano , 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) ("Mere forfeiture, as opposed to waiver, does not extinguish an 'error' * * * ").
{¶ 17} The state further argues that the appellate court's conclusion was in error because blackout is an excuse or justification that is peculiarly within the knowledge of the accused in support of which the accused can fairly be required to adduce evidence. The state supports its argument by citing decisions of several Ohio appellate courts, e.g. , State v. LaFreniere , 85 Ohio App.3d 840, 848-849, 621 N.E.2d 812 (11th Dist.1993) ; State v. Mobley , 5th Dist. Richland No. 2010-CA-0018, 2011-Ohio-309, 2011 WL 304360, ¶ 40-45, that treated blackout as an affirmative defense.
{¶ 18} Ireland argues that his blackout defense is a "failure of proof" defense and supports this argument by citing various out-of-state decisions and several treatises, *291 e.g. , State v. Hinkle , 200 W.Va. 280, 286, 489 S.E.2d 257 (1996) ; 2 Wayne R. LaFave, Substantive Criminal Law , Section 9.4(b) (3d Ed.2017) ; Joshua Dressler, Understanding Criminal Law 93-94 (7th Ed.2015). Ireland argues that the standard jury instruction on the blackout defense supports his argument that blackout is not an affirmative defense; Ireland notes that the jury instruction does not contain any reference to affirmative defenses. See Ohio Jury Instructions , CR Section 417.07.
{¶ 19} While the caselaw from other states, criminal-law treatises, and other educational sources may help one to understand the various public-policy arguments regarding why blackout should or should not be considered an affirmative defense, these authorities are not helpful to our analysis. We are bound by the language of R.C. 2901.05(D)(1)(b) and must determine whether the defense of *292 blackout meets the requirements of the statute: (1) an excuse or justification that is (2) peculiarly within the knowledge of the accused and (3) on which the accused can fairly be required to adduce supporting evidence.
2. Application of R.C. 2901.05(D)(1)(b) requirements
{¶ 20} In analyzing whether blackout constitutes an affirmative defense, we must first determine whether blackout is an "excuse" or "justification"; we conclude that blackout is an excuse. The General Assembly did not define "excuse" or "justification" in the Ohio Revised Code. Thus, those terms are "to be accorded [their] common, everyday meaning." State v. Dorso , 4 Ohio St.3d 60, 62, 446 N.E.2d 449 (1983). Black's Law Dictionary defines "excuse" as a "reason that justifies an act or omission or that relieves a person of a duty" or a "defense that arises because the defendant is not blameworthy for having acted in a way that would otherwise be criminal." Black's Law Dictionary 688 (10th Ed.2014). "[J]ustification" is defined as a "lawful or sufficient reason for one's acts or omissions; any fact that prevents an act from being wrongful" or a "showing, in court, of a sufficient reason why a defendant acted in a way that, in the absence of the reason, would constitute the offense with which the defendant is charged."Id. at 997.
{¶ 21} The trial court provided the jury with the standard instruction on the blackout defense: "Where a person commits an act while [unconscious], as in a coma, blackout , or convulsion due toheart failure, disease, sleep, or injury * * *." (Emphasis added.) See Ohio Jury Instructions , CR Section 417.07. A blackout as a result of any one of the listed causes-heart failure, disease, sleep, or injury-is a reason used to explain why a defendant acted in certain manner. A blackout is a defense that arises because the defendant is not blameworthy for having acted in a way that would otherwise be criminal. Therefore, blackout meets the definition of "excuse."
{¶ 22} A blackout excuse is "peculiarly within the knowledge of the accused," satisfying the second requirement of R.C. 2901.05(D)(1)(b), because only the accused could know or be able to describe his or her feelings and experiences during the alleged blackout.
{¶ 23} As for the third and final requirement of R.C. 2901.05(D)(1)(b), a defendant presenting a blackout defense can fairly be required to adduce evidence supporting the excuse. The accused will be aware of the circumstances surrounding his or her blackout and will not be disadvantaged if required to relay his or her version of events to the fact-finder. See State v. Doran , 5 Ohio St.3d 187, 193, 449 N.E.2d 1295 (1983) (it is not unfair to require the accused to adduce evidence supporting his *292 alleged lack of predisposition to commit the charged offenses, in support of his affirmative defense of entrapment). The defendant can fairly be required to adduce evidence supporting his or her excuse in part *293 because the defendant can (1) present the testimony of an expert witness, (2) call a lay witness, or (3) testify on his or her own behalf.
{¶ 24} Because the blackout defense meets all three requirements of R.C. 2901.05(D)(1)(b), we conclude that blackout is an affirmative defense.
{¶ 25} In this case, Ireland's blackout defense met all three requirements under R.C. 2901.05(D)(1)(b). Ireland's alleged PTSD dissociative episode fits squarely within the definition of "excuse" as either a disease or an injury that justifies Ireland's actions in this case. Ireland's alleged PTSD dissociative episode was also "peculiarly within [his] knowledge." Only Ireland knows whether he was aware of the actions he took at the time of the incident; Ireland is the only person who could know the way that he felt and what he experienced during the alleged PTSD dissociative episode. Despite this, there were numerous ways in which Ireland could support his blackout defense, none of which are unfair to Ireland. Ireland used the testimony of an expert witness, Dr. Reardon, to demonstrate that Ireland had experienced a PTSD dissociative episode during his altercation with the victim. Therefore, Ireland's alleged blackout caused by a PTSD dissociative episode is, pursuant to R.C. 2901.05(D)(1)(b), an affirmative defense because it is an excuse peculiarly within his knowledge in support of which he could fairly be required to adduce evidence.
{¶ 26} Ireland's blackout defense, therefore, is not a failure-of-proof challenge-it is an affirmative defense that would allow Ireland to avoid liability even if the state produced sufficient evidence to support a conviction.
B. Voluntary Act
{¶ 27} The General Assembly enacted R.C. 2901.21(A), modeled after Section 2.01(1) of the Model Penal Code (1962), to "codify the fundamental distinction between criminal misconduct on the one hand, and innocent conduct or accident on the other-that, generally, a person is not guilty of a criminal offense, unless he not only did a prohibited act, but had a certain guilty state of mind when he did it." Ohio Legislative Service Commission, Proposed Ohio Criminal Code: Final Report of the Technical Committee to Study Ohio Criminal Law and Procedures 40 (1971).
{¶ 28} R.C. 2901.21(A), the criminal-liability-and-culpability statute, states:
Except as provided in division (B) of this section, a person is not guilty of an offense unless both of the following apply:
(1) The person's liability is based on conduct that includes either a voluntary act , or an omission to perform an act or duty that the person is capable of performing;
*294 (2) The person has the requisite degree of culpability for each element as to which a culpable mental state is specified by the language defining the offense.
(Emphasis added.)
{¶ 29} The court of appeals, in this case, held that voluntariness is an element of every criminal offense pursuant to R.C. 2901.21(A). The state argues that the prosecution should not be required to prove that the defendant was not in a blackout state, and that the appellate court's interpretation adds an additional element, beyond the actus reus and mens rea, for the *293 state to prove. The state adds that voluntariness is not an element.
{¶ 30} "When construing a statute, we first examine its plain language and apply the statute as written when the meaning is clear and unambiguous." MedCorp, Inc. v. Dept. of Job & Family Servs ., 121 Ohio St.3d 622, 2009-Ohio-2058, 906 N.E.2d 1125, ¶ 9. We must give effect to the words used, refraining from inserting or deleting words. Cleveland Elec. Illum. Co. v. Cleveland , 37 Ohio St.3d 50, 53-54, 524 N.E.2d 441 (1988). " 'No part [of the statute] should be treated as superfluous unless that is manifestly required, and the court should avoid that construction which renders a provision meaningless or inoperative.' " (Brackets sic.) State ex rel. Carna v. Teays Valley Local School Dist. Bd. of Edn ., 131 Ohio St.3d 478, 2012-Ohio-1484, 967 N.E.2d 193, ¶ 19, quoting State ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. of Edn. , 95 Ohio St. 367, 373, 116 N.E. 516 (1917).
{¶ 31} Because R.C. 2901.21(A) is clear and unambiguous, we apply the statute as written. This court has noted that "every criminal offense is made up of (1) a voluntary act or a failure to act when there is a duty and (2) a culpable mental state for each element that specifies a mental state." (Emphasis added.) State v. Johnson , 128 Ohio St.3d 107, 2010-Ohio-6301, 942 N.E.2d 347, ¶ 16, citing R.C. 2901.21(A) ; see also State v. Nucklos , 121 Ohio St.3d 332, 2009-Ohio-792, 904 N.E.2d 512, ¶ 6, quoting R.C. 2901.21(A) ("In a criminal case, the state must prove that the accused engaged in 'a voluntary act * * *' with the 'requisite degree of culpability' for each element of the alleged offense in order to obtain a conviction"). As written, R.C. 2901.21(A) provides that for a person to be found guilty of a criminal offense, the person must have voluntarily committed a criminal act. We cannot ignore the fact that the word "voluntary" appears in the criminal-liability-and-culpability statute.
{¶ 32} The state argues that interpreting R.C. 2901.21(A) as including voluntariness as something that the state must prove imposes a new, additional burden on the state. We disagree.
*295 {¶ 33} Voluntariness is not an essential element of the offense such that it must be charged in the indictment or addressed in the trial court's jury instructions, even if the need for the act to be voluntarily committed is stated in the statutory scheme; rather, a challenge to voluntariness is a defense. This conclusion is supported by the General Assembly's decision to define "voluntary act" in the negative: "[r]eflexes, convulsions, body movements during unconsciousness or sleep, and body movements that are not otherwise a product of the actor's volition, are involuntary acts," R.C. 2901.21(F)(2). Thus, while the state is required to present evidence that the defendant committed the criminal act voluntarily, and while the jury can weigh the state's evidence against the defendant's counter evidence, the defendant is nonetheless required to prove excuses that are peculiarly within his knowledge in support of which he could fairly be required to adduce evidence by a preponderance of the evidence.
{¶ 34} Under the plain language of R.C. 2901.21(A)(1), the state must prove that the defendant acted voluntarily when committing a criminal act, but proof of the actus reus and mens rea is necessarily also evidence that the defendant acted voluntarily. Thus, the requirement that the state prove that the defendant acted voluntarily is not an additional element or burden on the state.
*294 C. Due Process
{¶ 35} Ireland argues that the trial court requiring him to prove his blackout defense by a preponderance of the evidence created an unconstitutional shift of the state's burden to prove all elements of the offense beyond a reasonable doubt. Ireland argues that this alleged burden shift violated his right to due process under the United States and Ohio Constitutions and violated the prohibition against cruel and unusual punishments contained in the Eighth Amendment to the United States Constitution. Because Ireland did not assert an Eighth Amendment challenge in the trial court or in the court of appeals, we do not address that argument. See Quarterman , 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, at ¶ 15.
{¶ 36} The state argues that the General Assembly, as with the defenses of insanity and self-defense, may place the burden of persuasion on the defendant to prove an R.C. 2901.05(D)(1)(b) affirmative defense by a preponderance of the evidence. Relying on Martin v. Ohio , 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), the state further argues that "it is constitutional to place the burden of persuasion on a defendant claiming a total mental incapacity to act voluntarily."
{¶ 37} In this case, we conduct a single analysis to address Ireland's due-process argument under the United States Constitution and the Ohio Constitution. While the Ohio Constitution is a document of independent force, Arnold v. Cleveland , 67 Ohio St.3d 35, 616 N.E.2d 163 (1993), paragraph one of the syllabus, the Due Course of Law Clause of Article I, Section 16 of the Ohio Constitution is *296 more often than not considered the functional equivalent of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, State v. Aalim , 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 15. But see Simpkins v. Grace Brethren Church of Delaware, Ohio , 149 Ohio St.3d 307, 2016-Ohio-8118, 75 N.E.3d 122, ¶ 34 (lead opinion) (noting that this court departed from the general rule in State v. Bode , 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156, ¶ 23-24 ). At this time, we see no reason, and Ireland provides no reason or caselaw to persuade us, to depart from the general rule that the Due Course of Law Clause of the Ohio Constitution and the Due Process Clause of the United States Constitution provide the same degree of protection in this particular case. Therefore, in this case, we apply the general rule to address Ireland's due-process argument.
{¶ 38} The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects the defendant from conviction except upon proof beyond a reasonable doubt of "all of the elements included in the definition of the offense of which the defendant is charged." Patterson v. New York , 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) ; accord see In re Winship , 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ; Speiser v. Randall , 357 U.S. 513, 526, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958). The United States Supreme Court has recognized that the state has the power to " 'regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion,' and its decision in this regard is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " Patterson at 201-202, 97 S.Ct. 2319, quoting Speiser at 523, 78 S.Ct. 1332 and Snyder v. Massachusetts , 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674 (1934), respectively.
{¶ 39} As we determined above, voluntariness is not an essential element *295 of felonious assault-the General Assembly defined "voluntary act" in the nature of a defense and chose not to include voluntariness in R.C. 2903.11(A). Therefore, because voluntariness is not an essential element of felonious assault, we reject Ireland's argument asserting a due-process violation based on an unconstitutional burden shift of an essential element of the offense.
{¶ 40} But assuming arguendo that the trial court did require Ireland to prove an affirmative defense that tended to negate part of an element of the offense, Ireland still has not demonstrated a due-process violation. While the Due Process Clause prohibits states from requiring an accused to disprove an element of the crime charged, see Mullaney v. Wilbur , 421 U.S. 684, 704, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), a state does not violate the Due Process Clause by requiring the defendant to prove an affirmative defense by a preponderance of the *297 evidence, even when the evidence used to prove the affirmative defense might also negate an element of the offense at issue, see Leland v. Oregon , 343 U.S. 790, 798-800, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952) (Oregon statute that required the accused to establish an insanity defense beyond a reasonable doubt did not violate the federal Due Process Clause); Patterson at 205-207, 97 S.Ct. 2319 (New York law requiring that the defendant in a prosecution for second-degree murder prove by a preponderance of the evidence the affirmative defense of extreme emotional disturbance in order to reduce the crime to manslaughter did not violate the federal Due Process Clause); Martin , 480 U.S. at 233, 107 S.Ct. 1098, 94 L.Ed.2d 267 (Ohio law that required the defendant to prove self-defense by a preponderance of the evidence did not violate the federal Due Process Clause).
{¶ 41} The statutes at issue, R.C. 2903.11(A) and 2901.05(A), do not require the defendant to negate any element of the offense of felonious assault. Rather, the General Assembly has provided that if the defendant presents a defense meeting the requirements listed in R.C. 2901.05(D)(1)(b) to be considered an affirmative defense, the defendant has the burden to prove the defense by a preponderance of the evidence.
{¶ 42} As demonstrated in this case, the trial court correctly assigned the burdens of the parties and emphasized that the state had the burden to prove all elements of the offense beyond a reasonable doubt. The court specifically instructed the jury that the state had the burden to prove every element beyond a reasonable doubt: "The defendant must be acquitted of an offense unless the State produces evidence which convinces you beyond a reasonable doubt of every essential element of the offense." The court further instructed, "Before you can find the defendant guilty of felonious assault, you must find beyond a reasonable doubt that * * * the defendant knowingly caused serious physical harm to [the victim]."
{¶ 43} The trial court also instructed the jury, "If the defendant fails to establish the defense of blackout, the State still must prove to you beyond a reasonable doubt all the elements of the crime charged."
{¶ 44} The trial court properly instructed the jury that Ireland must prove his defense by a preponderance of the evidence; the trial court also properly instructed the jury that even if Ireland did not prove his defense by a preponderance of the evidence, the jury must determine whether the state proved each of the elements of felonious assault beyond a reasonable doubt.
*296 {¶ 45} "The jury is presumed to have followed the court's instructions." State v. Jones , 91 Ohio St.3d 335, 344, 744 N.E.2d 1163 (2001). Hence, the trial court's instructions to the jury did not shift to Ireland the state's burden to prove each element of felonious assault beyond a reasonable doubt.
*298 {¶ 46} Furthermore, so long as the state retains the burden to prove every essential element of the offense beyond a reasonable doubt, the defendant's due-process rights are not violated when the defendant is required to prove an affirmative defense by a preponderance of the evidence and the evidence presented by the defendant in support of the affirmative defense also attacks the state's case-in-chief. See Martin , 480 U.S. at 239, 107 S.Ct. 1098, 94 L.Ed.2d 267 (Powell, J., dissenting) ("The Court * * * seems to conclude that as long as the jury is told that the state has the burden of proving all elements of the crime, the overlap between the offense and defense is immaterial"). The trial court instructed the jury that the "evidence is all the testimony received from the witnesses, the exhibits admitted during the trial, and the facts agreed to by counsel" and that the jury is "the sole judge of the facts, the credibility of the witnesses, and the weight of the evidence." The jury was not instructed that it could consider Ireland's evidence only for Ireland's defense-the jury was instructed to consider all the evidence, weigh the evidence, and determine whether the state had met its burden beyond a reasonable doubt.
{¶ 47} Under Martin , the trial court's instructions did not violate Ireland's due-process rights because the jury was correctly instructed that the state had the burden to prove all elements of the offense beyond a reasonable doubt and because the evidence presented by Ireland that he blacked out went to both challenging the state's case-in-chief and supporting Ireland's affirmative defense.
{¶ 48} Because voluntariness is not an essential element of felonious assault and the trial court properly instructed the jury that the state had the burden of proving each element of the offense beyond a reasonable doubt, the trial court did not shift to Ireland the state's burden to prove an essential element of the offense charged. We conclude that no due-process violation occurred under either the Ohio Constitution or the United States Constitution and that the trial court did not commit error.
III. CONCLUSION
{¶ 49} We conclude that blackout constitutes an affirmative defense as defined in R.C. 2901.05(D)(1)(b). While the evidence used to assert a blackout affirmative defense pursuant to R.C. 2901.05(D)(1)(b) may overlap with the evidence used to challenge the state's case-in-chief, this overlap does not create an impermissible burden shift and does not violate the defendant's right to due process. Therefore, we reverse the judgment of the Tenth District Court of Appeals and remand the cause to that court for consideration of Ireland's remaining assignments of error.
Judgment reversed and cause remanded.
O'Donnell, J., concurs.
O'Connor, C.J., concurs in judgment only.
DeGenaro, J., concurs in judgment only, with an opinion joined by French, J.
Kennedy, J., dissents, with an opinion joined by DeWine, J.
DeGenaro, J., concurring in judgment only.
*299 *297 {¶ 50} I concur in the court's judgment reversing the judgment of the Tenth District Court of Appeals, which held that the trial court committed structural error by instructing the jury that "blackout" was an affirmative defense. I would reverse the Tenth District's judgment because its holding was premised on the incorrect notion that the trial court used "blackout" in appellee Darin Ireland's specific case to connote an unconscious, involuntary act as contemplated in R.C. 2901.21(A)(1) and (F)(2) . In t he act ual co ntext of Ireland's case, the term "blackout" was used as a placeholder for his insanity-related defense.
{¶ 51} Because Ireland's case did not actually involve an unconsciousness claim under R.C. 2901.21, his argument in the Tenth District regarding the proper burden of proof for such a claim was hypothetical and solicited an advisory opinion. We provide no service to trial judges and litigants in Ohio by issuing our own advisory opinion about the burden of proof that would apply to a defense that was not substantively part of Ireland's jury charge. I respectfully disagree with the premise of both the lead opinion and the dissent that we should reach the question of what burden of proof would apply to an unconsciousness claim.
{¶ 52} The factual and procedural context of Ireland's case reveals the nature of his defense and the way in which it was able to reach the jury. Ireland was charged with felonious assault after he severely beat Drew Coen in the parking lot of a bar. During the discovery process, Ireland provided the state with a forensic-psychological-examination report prepared by forensic psychologist James Reardon, Ph.D., who opined that Ireland suffered from posttraumatic stress disorder ("PTSD") and dissociative episodes.
{¶ 53} The state filed three motions in response, arguing that either Ireland's evidence should be excluded as unfairly prejudicial pursuant to Evid.R. 403 or else the state should be given the opportunity for rebuttal by conducting its own psychological evaluation and/or presenting other-acts evidence pursuant to Evid.R. 404(B) (evidence of other acts may be admitted to prove motive, intent, or absence of mistake or accident). Although the state pointed out that Ireland's defense was akin to an insanity defense, the state did not argue that Ireland was attempting to present an impermissible diminished-capacity defense. Further, the state was not successful in its motions.
*300 {¶ 54} At trial, the state presented evidence that Ireland spent a portion of the evening leading up to the assault at a local neighborhood bar, where he was a regular customer. At approximately 1:00 a.m., Ireland was among a group of people who were smoking and chatting outside the entrance to the bar. Coen was leaving the bar at that time, when Ireland's friend, Tyler Thrash, attacked Coen and put him in a choke hold.
{¶ 55} Ireland helped to pull Thrash away, admonishing him to get off of Coen. But after Thrash indicated that Coen had inappropriately touched Ireland's wife, Ireland himself began to attack Coen, saying, "Whose woman did you touch? You touched my woman?" Ireland proceeded to knock Coen unconscious and then kicked and stomped on Coen's head over the course of five to ten minutes. Ireland's many blows caused serious damage, breaking Coen's nose, jaw, and orbital bone.
{¶ 56} Because of immediate medical attention, Coen survived the assault. During Coen's initial hospitalization, surgeons *298 wired his jaw shut and installed three metal plates, along with brackets and screws, to allow the bones of his skull to fuse back together. He underwent two additional surgeries over the following six months. He slowly recovered from blurred vision, vertigo, and damage to his knee over the year following the assault. The nerve damage to his face, though, was permanent.
{¶ 57} The sole witness called by the defense was Dr. Reardon, the forensic psychologist who had evaluated Ireland in preparation for trial. Reardon opined that Ireland had PTSD with dissociative symptoms as well as an alcohol-use disorder with probable alcoholic blackouts. Reardon explained that a dissociative episode "is an alteration in consciousness, memory, and the ability to make * * * rational decisions," during which a person acts "habitually" rather than "consciously." Reardon distinguished a dissociative episode from an alcoholic blackout by explaining that a dissociated person is generally in a state of "hyperarousal" whereas a person experiencing an alcoholic blackout can range from apparently functioning to "completely out, literally blacked out, passed out."
{¶ 58} The nature of Ireland's defense and the jury instructions appropriate for his defense were repeatedly discussed throughout the proceedings. The trial court expressed concern that Ireland appeared to be presenting an insanity defense, which would require the court to stop the trial and refer Ireland for an evaluation of his mental condition at the time of the incident, to explore a possible plea of not guilty by reason of insanity ("NGRI"). The court ultimately allowed the trial to proceed and included an instruction regarding blackout in the jury charge, over the state's objection.
{¶ 59} The trial court also determined, however, that Ireland had not presented sufficient evidence of unconsciousness within the meaning of R.C. 2901.21(F)(2) to *301 support providing a blackout instruction that indicated unconsciousness as contemplated in that provision. The court explained that although Ireland's proposed blackout definition connoted unconsciousness "like sleepwalking," his evidence supported only the kind of blackout that would be an affirmative defense. The court invited the defense to present additional evidence to attempt to support the type of blackout that Ireland was promoting, but the defense declined. Accordingly, the trial court altered Ireland's requested blackout instruction by adding the explanation that Ireland's blackout defense was an affirmative defense.
{¶ 60} On appeal, Ireland argued that the trial court unconstitutionally put the burden of proving unconsciousness on Ireland by describing blackout as an affirmative defense. This argument presumed that the instruction was intended to be a pure representation of the voluntary-act requirement of R.C. 2901.21(A)(1) and its negation through proving unconsciousness under R.C. 2901.21(F)(2). Given that this was not, in fact, the case at trial, Ireland's argument had a false premise and should not have been taken at face value by the court of appeals.
{¶ 61} Ireland's defense was based on his alleged altered state of consciousness due to a dissociative episode. Ireland used the defense to argue that he lacked the capacity to form the mens rea of the offense with which he was charged. Outside the context of an insanity defense, an attempt to refute the mens rea of an offense through expert psychiatric testimony constitutes a diminished-capacity defense, which is not recognized in Ohio. State v. Wilcox , 70 Ohio St.2d 182, 436 N.E.2d 523 (1982), paragraphs one and two of the syllabus. If an NGRI plea is not involved, "[p]roof that a person's reason, at the time *299 of the commission of an offense, was so impaired that the person did not have the ability to refrain from doing the person's act or acts, does not constitute a defense." R.C. 2945.391.
{¶ 62} Ireland's claim of being in a temporarily altered state of consciousness is a typical diminished-capacity defense. State v. Fulmer , 117 Ohio St.3d 319, 2008-Ohio-936, 883 N.E.2d 1052, ¶ 67-70 (a claim of temporary derangement was the functional equivalent of an impermissible diminished-capacity defense); State v. Pennington , 4th Dist. Pickaway No. 99 CA 26, 2000 WL 670306, *4 (May 16, 2000) (evidence of a dissociative episode may not be presented for purpose of negating mens rea by a defendant who is not asserting an insanity defense); State v. Napier , 12th Dist. Clermont No. CA2016-04-022, 2017-Ohio-246, 2017 WL 283473, ¶ 23-28, appeal not accepted , 150 Ohio St.3d 1452, 2017-Ohio-8136, 83 N.E.3d 938 (PTSD is not a stand-alone defense, and PTSD evidence may not be presented for purpose of negating mens rea by a defendant who is not asserting an insanity defense).
{¶ 63} The lead opinion declines to address the nature of Ireland's diminished-capacity defense due to the state's waiver of certain issues at trial. The state may have waived arguments that (1) Ireland should have been prohibited from raising *302 a diminished-capacity defense and presenting expert testimony to negate the required mens rea outside of a plea of NGRI and (2) the jury should not have been instructed to consider that defense-whether labeled as "blackout" or anything else. But the state did not waive the meaning of diminished capacity or unconsciousness as a matter of law.
{¶ 64} Unconsciousness and diminished capacity are not synonymous. Diminished capacity, while not a proper insanity defense in itself, is still an insanity-related defense. Wilcox , 70 Ohio St.2d at 185-186, 436 N.E.2d 523 (diminished capacity is a partial-insanity defense). It is not an unconsciousness claim. See State v. McDaniel , 9th Dist. Summit No. 18805, 1998 WL 887184, *4-5 (Dec. 16, 1998) (defendant's allegation of a delusional episode constituted a diminished-capacity defense, not an unconsciousness or involuntary-act claim); Pennington at *7 (approving of the reasoning in McDaniel and holding that the defendant's allegation of a dissociative episode constituted a diminished-capacity defense despite his attempts to characterize the nature of the claim as unconsciousness); State v. Mobley , 5th Dist. Richland No. 2010-CA-0018, 2011-Ohio-309, 2011 WL 304360, ¶ 45-47.
{¶ 65} Given that insanity is a statutorily recognized affirmative defense in Ohio, R.C. 2901.01(A)(14), a partial-insanity or insanity-related defense such as diminished capacity would be an affirmative defense as well. See Fulmer , 117 Ohio St.3d 319, 2008-Ohio-936, 883 N.E.2d 1052, at ¶ 71-72 (describing diminished capacity as an affirmative defense). It is for this reason that the trial court appropriately described Ireland's defense as an affirmative defense. The fact that the trial court used the concept of blackout as a placeholder for Ireland's normally impermissible affirmative defense of diminished capacity does not mean that diminished capacity constitutes unconsciousness as contemplated in R.C. 2901.21(F)(2), nor does it mean that unconsciousness is necessarily an affirmative defense. Thus, to the extent that the trial court's explanation of Ireland's burden of proving blackout might have been unfaithful to R.C. 2901.21(A)(1) and (F)(2), it could not have caused constitutional error, let alone structural error, because it was faithful to the actual defense Ireland presented.
*300 {¶ 66} The reality and severity of the psychological and neurological injuries that disproportionately plague the members of our armed forces long after they return home from combat calls into question the narrowness of Ohio's insanity standard, particularly in light of the medical community's many advancements in understanding the effects of physically and psychologically traumatic events on the brain. However, we must adhere to the current statutory scheme governing insanity and mental-impairment condi tions that fall sh ort of insanity. See R.C. 2945.391 and 2945.40. Whether R.C. 2945.391 should no longer include states of *303 diminished capacity-such as the psychiatric condition of dissociation-is a question for the General Assembly alone.
{¶ 67} It may or may not be true that a claim of unconsciousness constitutes an affirmative defense. But that is an issue we should wait to consider until we have a proper unconscious, involuntary-act scenario before us. Answering the question in this case results in an advisory opinion at best, and at worst, it sows confusion regarding the legal meanings of unconsciousness, insanity, and diminished capacity.
{¶ 68} Because the trial court determined that Ireland's partial-insanity defense did not support a blackout instruction that connoted unconsciousness as contemplated in R.C. 2901.21(F)(2), the burden of proof associated with R.C. 2901.21(F)(2) was not relevant to Ireland's case irrespective of the state's preservation of arguments at trial. The Tenth District erred in considering R.C. 2901.21(F)(2) to be central to the trial court's instruction and in finding structural error as a result. Based on these separate grounds, I would reverse the judgment of the Tenth District Court of Appeals and remand the case for that court to consider the remaining assignments of error that were mooted.
French, J., concurs in the foregoing opinion.