[Cite as *State v. Schmidt*, 2022-Ohio-4138.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-12-115 |
| | : | O P I N I O N |
| - vs - | | 11/21/2022 |
| | : | |
| ERIC S. SCHMIDT, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 20CR37357

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Pinales Stachler Young & Burrell Co., LPA, and Eric G. Eckes and Molly T. Tolbert, for appellant.

**PIPER, J.**

{¶1}  Appellant, Eric Schmidt, appeals his conviction in the Warren County Court of Common Pleas for gross sexual imposition.  Schmidt contends that there was insufficient evidence to sustain his conviction and his conviction was against the manifest weight of the evidence.  He further argues the trial court erred and abused its discretion by admitting other-acts testimony concerning an instance of prior sexual misconduct.  For the reasons

detailed below, we affirm.

{¶2}   For privacy reasons we use fictional first names.  We begin with the incidents that prompted charges to be filed:

### I. 2019 Incidents Resulting in Charges Involving Amber

{¶3}   Amber, who was 12 years old at the time of the incidents, testified that Schmidt engaged in three separate instances of sexual misconduct.  The alleged incidents occurred in the vicinity of a basement window, the basement bathroom, and upstairs in her brother's bedroom.

{¶4}   On September 7, 2019, Amber's father hosted a watch party for a college football game at his home in Mason.  Amber's father is a head coach for a youth football team.  He invited several of his youth football players, their families, and some assistant coaches.  The testimony from trial revealed that the adults mostly congregated outside and on the back patio while the children were running around playing throughout the house.  Schmidt, one of the assistant coaches, arrived late.  Several attendees observed that Schmidt had been drinking heavily, appeared intoxicated, and was making people uncomfortable.  He was seen dancing in a somewhat lewd fashion.[1]

### A. Two Basement Incidences

{¶5}   During the party, Schmidt was in the basement with Amber and two other children, including a 14-year-old boy ("Kevin").  Those in the basement could hear arguing outside.  Amber was curious and attempted to peer out of a small basement window that was slightly too high for her to see.  It is undisputed that Schmidt picked Amber up, although there was conflicting evidence as to whether she asked him to do so.  Kevin testified that Amber asked Schmidt to pick her up to see outside the window while Amber testified that

---

1. In one photograph taken that evening, Schmidt can be seen shirtless with his legs apart standing on a couch with his groin in close proximity to an adult female's face.

she was able to see by standing on a stool and that she did not ask Schmidt to pick her up.

{¶6} After Schmidt picked Amber up, Kevin testified that he saw Schmidt's thumb slip inside Amber's shorts. Amber, however, testified that Schmidt's thumb did more than slip inside her shorts. Amber testified that Schmidt's hand went up her shorts to her crotch and went under her underwear. Schmidt then grabbed her by the chest and lowered her to the floor.

{¶7} Soon thereafter Kevin was called upstairs, and Amber testified she was left alone with Schmidt. Amber testified that Schmidt removed his erect penis from his pants, began touching himself and eventually backed her into the basement bathroom. Amber testified that she was in shock and unsure of what to do. Amber testified the situation eventually ended when she refused to look by looking away. Schmidt then put his penis back in his shorts and left the bathroom.

### B. Brother's Upstairs Bedroom

{¶8} The final act involving Amber allegedly occurred later in her brother's upstairs bedroom. There, Amber was sitting on the top bunk of her brother's bunk bed. Schmidt entered the room and began "messing" with Amber. One of the boys in the room observed Schmidt touching Amber's "butt" and thought it was "weird," so he and Amber's brother went downstairs to alert their fathers. Amber testified that Schmidt's hand had once again gone under her shorts and underwear. She testified that Schmidt touched her clitoris, the same place where he touched her in the basement, and he inserted two fingers into her vagina. Later, Amber's father and another adult came upstairs and suggested that Schmidt go downstairs with the adults. Eventually, Schmidt's wife came to the house to take him home.

{¶9} Amber testified that she did not tell anyone what Schmidt had done because he was good friends with everyone at the party and she feared she would not be believed. She also said that she felt ashamed by what happened. However, a few days later, Amber

wrote a letter to her mother describing the incidents. Amber's mother did not call the police. However, the police did become involved a few months later when Amber was taken by her mother to Children's Hospital for an incident of self-harm and suicidal thoughts. While alone with a nurse, Amber was asked if she had been touched inappropriately by anyone in a way she didn't like, at which time Amber disclosed the incidents to the nurse, who was a mandatory reporter.

**II. 2015 Incidents Resulting in Charges Involving Beth**

{¶10} On April 17, 2015, Beth, who was also 12 years old at the time, was spending the night with Schmidt's daughter ("Daughter"). After spending time in Daughter's room, Beth and Daughter decided to go to the basement to watch a movie. Daughter invited Schmidt to come downstairs with them. Schmidt's basement contains a theatre-style movie room with a projector and several theatre-style chairs.

{¶11} Beth testified that she and Daughter sat in the theatre-style seats. Schmidt sat next to Beth on a bean bag chair. The precise sequence of events is unclear, however, there were contemporaneous text messages sent from Beth's phone to others asserting that Schmidt was behaving inappropriately. Beth testified that Daughter fell asleep while watching the movie. Schmidt remained seated on the bean bag chair next to Beth, exposing himself, and began touching her hand, rubbing up on her arm and shoulder, and across her breast. Beth testified that she tried to wake Daughter by attempting to show her something on her phone, but that Daughter quickly fell back asleep. Beth testified that Schmidt resumed touching her. He allegedly touched her leg, outer thigh, stomach, and tried to place his hand down her waistband. While Schmidt was touching her, Beth testified that Schmidt had his penis exposed and was touching it. Beth eventually told Schmidt to stop, which he did. Schmidt then told her not to tell Daughter.

{¶12} Finally, Beth testified that Schmidt went upstairs but later returned in

approximately 30 minutes. Beth testified that Schmidt stood behind her and masturbated. Apparently somewhat stunned, Beth testified she tried to ignore Schmidt with his penis exposed. Later in the week, Beth told Daughter what had happened in a text message. Beth's mother subsequently saw that message and confronted Beth about it. The incident was reported to law enforcement, but apparently no charges were brought as the family indicated that they did not want to pursue the matter. In 2020, Beth learned about the allegations involving Amber and requested the state also pursue charges regarding what had happened to her. [2]

### III. 2015 Evid. R. 404(B) Unindicted Incident Involving Claire

{¶13} The other incident, which was prior to the indicted offenses, involves conduct allegedly occurring during the winter break period in early 2015 involving Schmidt's 19-year-old niece, Claire. Schmidt was not charged with any offenses regarding this incident. Claire testified that she spent her winter break staying at Schmidt's home as she participated in an internship. One evening, Schmidt and Claire were alone. Claire testified that she was watching a television program with Schmidt in the theatre room.[3] While doing so, she observed Schmidt touching his exposed penis while he sat near her. Upon seeing this, Claire stood up which prompted Schmidt to stand up. Schmidt then stood there with his genitals exposed while staring at her. Claire then ran upstairs and locked herself in her room. Claire did not immediately tell anyone what had occurred. Claire testified that she was unsure of how to handle the situation and did not say anything at the time because she

---

2. It is common knowledge that sexual offense victims often feel they are alone in what occurred to them—that the event was an isolated occurrence. Often with little or no corroboration, it becomes an insurmountable task to gain the confidence and fortitude necessary to expose the perpetrator. Fear of not being believed, of being embarrassed, and enduring shame, are but a few emotions that suppress the need to make the occurrence publicly known. Yet upon learning others have experienced a similar event from the same perpetrator, the need to come forward is reinforced.

3. This is the same basement theatre room where only a few months later a similar incident involving Beth would occur.

was scared and would be ending her stay the next day.

### IV. Indictments (As to Amber and Beth)

{¶14} On October 19, 2020, Schmidt was indicted on three counts related to conduct involving Amber and two counts involving Beth. As to Amber, Schmidt was charged with rape of a child under 13 years of age, gross sexual imposition, and public indecency. As to Beth, Schmidt was charged with gross sexual imposition and public indecency. Schmidt pled not guilty, and the matter proceeded to a jury trial.

### V. Trial

{¶15} On the first day of trial, the state introduced the testimony of Beth who testified about the incidents on April 17, 2015, when she was in the basement with Schmidt as Daughter was asleep.

{¶16} On the second day of trial, the state presented the testimony of a Mason Police Detective involved in the 2015 investigation. The Detective testified that the case was closed in June 2015 because the victim and her family did not want to proceed. Also, on the second day of trial, the state introduced the testimony of Claire, who testified about the earlier 2015 winter break incident where Schmidt was touching his exposed penis in the theatre room while alone with her. All the female witnesses making the allegations in this case testified they did not know one another.

{¶17} During the third day of trial, the state introduced testimony from witnesses who attended the September 7, 2019, watch party. The state called Kevin, who testified that he saw Schmidt lift Amber up and, in so doing, saw "his thumb slipped up the inside of her pant leg * * * [i]nside like the inner thigh of the shorts." Kevin was also upstairs when he saw Schmidt "messing" with Amber and thought it was weird, so he needed to tell an adult about what was going on. Kevin claimed to have been with Amber the entire night, yet Kevin did not observe the basement bathroom incident which Amber described.

{¶18} Amber's testimony is largely addressed above. Amber testified that Schmidt touched her crotch under her underwear in the basement and shortly thereafter exposed himself and was touching his penis while backing her into the basement bathroom. Later, upstairs in the bedroom, Schmidt commenced touching her vagina, inserting two fingers and touching her clitoris. She testified that she did not know what the word "clitoris" was at the time but confirmed that Schmidt touched it in the bedroom and in the basement.

{¶19} On the final day of testimony, Schmidt introduced the testimony of Daughter. Daughter testified that Beth had a history of lying. She corroborated that she watched a movie in the basement with Schmidt and Beth but denied falling asleep. She testified that Beth made up the allegation because Daughter had told Beth that she (Daughter) wanted to take a break from their friendship.

## VI. Verdict

{¶20} Following closing argument, the jury began deliberations. After considerable deliberations, the jury was unable to reach a consensus on all counts and its deliberations were concluded. The jury found Schmidt guilty of the single count of gross sexual imposition involving Amber (this count involved the incident where Schmidt picked Amber up to see out the window and his hand went between her legs underneath her underwear). The jury found Schmidt not guilty of rape (this count involved Amber upstairs in her brother's bedroom) and not guilty of public indecency involving Amber (this count alleged that Schmidt had his penis exposed and was touching it in the basement bathroom). The jury could not reach a verdict as to both allegations involving Beth (these counts involved charges of gross sexual imposition and public indecency).

## VII. Subsequent Guilty Plea and Sentencing

{¶21} On December 8, 2021, the state agreed to dismiss the felony charge of gross sexual imposition involving Beth and Schmidt then entered a no contest plea to the public

indecency charge. Upon finding Schmidt guilty of the public indecency charge, the trial court sentenced Schmidt to a 42-month prison term for his conviction for gross sexual imposition involving Amber and 30 days in jail for his conviction of public indecency involving Beth. Both terms were ordered to be served concurrently. Schmidt timely appeals, raising three assignments of error for review.

## VIII. Appeal

{¶22} Assignment of Error No. 1:

{¶23} THE TRIAL COURT ERRED WHEN ADMITTING IMPROPER 404(B) CHARACTER EVIDENCE.

{¶24} Schmidt argues in his first assignment of error that the trial court erred in admitting "other-acts" evidence in violation of Evid.R. 404(B). Schmidt's argument focuses in a very limited way on the admissibility of Claire's testimony with respect to only one of the incidents involving Amber—that is, with regard to when she was picked up by Schmidt and he touched her between the legs under her underwear. Schmidt neglects to discuss the admissibility of Claire's testimony as relevant to the charges of gross sexual imposition and public indecency involving Beth and the basement bathroom public indecency incident involving Amber. We, however, must examine the trial court's determination as to the admissibility of Claire's testimony at the time the decision was made at trial, that is, when the trial court had all five charges pending before it, including the four charges upon which jury deliberations resulted in no convictions.[4]

## A. Evid.R. 404(B) Standard of Review

{¶25} "The admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law" that is reviewed de novo. *State v. Hartman*, 161 Ohio St. 3d 214, 2020-

---

4. The dissent's footnotes 7 & 8 fail to understand the basis of our analysis.

Ohio-4440, ¶ 22. However, some aspects of the analysis require employment of the trial court's discretion, such as addressing whether the evidence is prejudicial. *Id.* at ¶ 30. Thus, we apply a mixed standard of review when addressing the admission of other-acts evidence. *Id.* While a de novo review requires this court to review the matter anew, an abuse of discretion standard requires us to determine whether the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Baker*, 12th Dist. Butler No. CA2020-08-086, 2021-Ohio-272, ¶ 27.

## B. *State v. Hartman*

**{¶26}** In *Hartman*, the defendant was accused of raping an adult female acquaintance in her hotel room after they had spent the evening out with a group of friends. *Id.* at ¶ 1. The defendant maintained that the sexual encounter was consensual. To rebut that claim, the state presented evidence establishing that the defendant had sexually abused his stepdaughter when she was a child. *Id.* at ¶ 12. The defendant was found guilty of rape. *Id.* at ¶ 16. On appeal, the Eighth District Court of Appeals reversed the defendant's convictions on grounds that the evidence purporting to show that he sexually abused his stepdaughter was inadmissible other-acts evidence under Evid.R. 404(B). *Id.* at ¶ 17.

**{¶27}** The supreme court in *Hartman* accepted the appeal on the following proposition of law:

> In sexual assault cases, other acts evidence offered to prove the intent of the offender or the offender's plan is admissible pursuant to Evid.R. 404(B), even when the identity of the offender is not at issue.

*Id.* at ¶ 18. The supreme court agreed with the proposition of law that identity was not required to be an issue for other-acts evidence to have a permissible purpose. *Id.* However, after analyzing permitted purposes as applied to the facts of the case the supreme court

determined that the other-acts evidence was not admitted for a purpose other than to prove Hartman acted in accordance with his character for committing such acts. Therefore, the court in *Hartman* concluded the other-acts evidence was improperly admitted. *Id.*

{¶28} In conducting an in-depth examination of "other permissible purposes" the *Hartman* court acknowledged that other-acts evidence "almost always carries some risk that the jury will draw the forbidden propensity inference." *Id.* at ¶ 33. Therefore, the other-acts evidence must be evaluated in terms of its relevancy to the particular purpose for which it is offered other than the person's character. *Id.* at ¶ 26. The purpose may not be solely to show the defendant's bad character to commit forbidden acts. *Id.* The other-acts evidence must be such that the jury can reasonably conclude that the other act occurred, and that the defendant was the actor. *Id.* However, "the trial court must determine whether the proffered evidence—though admissible under Evid.R. 404(B)—is nevertheless substantially more prejudicial than probative." *Id.* at ¶ 29.

### C. Permissible Purpose - Intent

{¶29} Evid.R. 404(B)(1) provides that "evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with a trait of character." However, Evid. R. 404(B)(2) provides "that the other crime, wrong, or act may be admissible for another purpose," and gives examples of permitted uses. Evid.R. 404 provides a nonexhaustive list of permissible purposes for which other-acts evidence may be introduced. *Hartman*, 2020-Ohio-4440 at ¶ 26; *State v. York*, 3d Dist. Union No. 14-21-14, 2022-Ohio-1626, ¶ 40.

{¶30} The permissible purpose must go to a "material" issue that needs to be determined. *Id.* at ¶ 27, quoting *Huddleston v. United States*, 485 U.S. 681, 686, 108 S.Ct. 1496 (1988). Generally, intent is an element of most crimes, but it is typically not a material issue for other-acts purposes. *Hartman* at ¶ 55. In most cases "the act speaks for itself."

*Id.* However, when the state must prove a specific intent in addition to proving the accused knowingly committed the criminal act, specific intent crimes create a permissible purpose for using 404(B) evidence. "When a defendant is charged with a specific intent crime, however, the specific intent becomes a material issue in the case." *Id.* at ¶ 55. The dissent fails to address that *Hartman* expressly determines that intent is a purpose for admissibility when the crime to be proved is a specific intent crime. Several of the offenses Schmidt was charged with were specific intent crimes. Specific intent requires proof of a particular intent included as a statutory element of the criminal offense to be proved beyond a reasonable doubt *in addition to* the mental culpability element of knowingly.

{¶31} To be probative of intent, rather than the defendant's propensity to commit sexual crimes, the other-acts evidence "must be sufficiently similar to the crime charged." *State v. Smith*, 162 Ohio St.3d 353, 2020-Ohio-4441, ¶ 45. The other-acts evidence must be offered for a proper Evid.R. 404(B) purpose relevant to a particular purpose, and specific intent is a recognized particular purpose. *Hartman* at ¶ 26, 55.

> Or to put it another way, the other-acts evidence "must be so related to the crime charged in time or circumstances that evidence of the other acts is significantly useful in showing the defendant's intent in connection with the crime charged." *Wharton's Criminal Evidence* at Section 4:31.

*Hartman* at ¶ 58. The recognized use of other-acts evidence for specific intent offenses is well rooted in Ohio jurisprudence. *State v. Davis*, 90 Ohio St. 100, 105-106 (1914) (soliciting a bribe contained a specific purpose to influence Davis' vote approving a public contract).

{¶32} A gross sexual imposition charge proscribes touching certain areas of the body. Beyond proving the touching, the definition of "sexual contact" requires the state prove, beyond a reasonable doubt, "the defendant's purpose or specific intention" in touching the proscribed areas. *State v. Chute*, 3d Dist. Union No. 14-22-02, 2022-Ohio-2722, ¶ 13, citing *State v. Mundy*, 99 Ohio App.3d 275, 288 (2d Dist.1994). The touching

must specifically be proved to have occurred "for the purpose of sexually arousing or gratifying either person." R.C.2907.01(B).

**{¶33}** A public indecency charge, while possessing the mens rea of "knowingly," also requires proof of a specific intention: the exposing of private parts "with the purpose of personal sexual arousal or gratification." R.C. 2907.09(B)(4). A person acts purposefully "when it is a specific intention to cause a certain result * * *." R.C.2901.22(A).

### D. Intent Evidence Admitted

**{¶34}** The trial court permitted Claire's testimony as going to intent but provided the jury with a cautionary instruction on the limited use of her testimony. The trial court addressed this issue again in its final jury instructions. The final jury instructions deviated slightly from the initial cautionary instruction; however, intent was consistently stated as a permissible purpose.[5] The state's pretrial reasons also consistently gave intent as one of the permissible purposes it was offering Claire's testimony. When Claire's testimony was admitted, the state was offering Claire's incident to show that Schmidt exposed his penis in front of unsuspecting young females with a specific intent. Specific intent is found in R.C. 2907.09 as committing the offense with the specified "purpose of personal sexual arousal or gratification." Specific intent is also found in R.C.2907.05(B) in committing the offense with the specified "purpose of sexually arousing or gratifying either person." With a specific purpose being an additional element of the offense, gross sexual imposition is a specific

---

5. In giving the cautionary instruction, the trial court stated that the evidence could be considered to prove motive, opportunity, or intent. However, in crafting its final jury instruction, the trial court stated that the other-acts evidence could only be considered for the limited purpose of proving opportunity, intent, and/or absence of mistake or accident. In arguing the other-acts evidence was improper, Schmidt suggests he did not have consistent notice of the reason and purpose the other-acts evidence was being offered. However, intent and opportunity were consistently stated reasons. Furthermore, the record does not reveal Schmidt's counsel was unable to prepare an effective cross examination. Therefore, we find no reason to expound upon Schmidt's suggestion.

intent offense. *Mundy*, 99 Ohio App.3d at 292.

{¶35} Schmidt maintains that the allegation he exposed and was touching his penis in front of Claire was only offered for proof of his character with a propensity to commit sexual crimes. Schmidt argues that Claire is not the same type of victim as Amber and Beth because Claire was seven years older. Schmidt attempts to draw the insignificant age difference as a significant dissimilarity. Mostly, however, Schmidt argues that the conduct involving Claire is not similar to the singular incident when he picked up Amber and his hand went underneath her underwear into her private area. Schmidt concludes the evidence was only used to prove he possessed the character trait of a "sexual deviant" and acted in conformity with that trait.

{¶36} To the contrary, if Claire's testimony was propensity evidence to prove Schmidt was a sexual deviant, the jury would have found Schmidt guilty of the similar incidences involving Amber and Beth. Yet the jury did not find Schmidt guilty of the three offenses with factual circumstances extremely similar to Claire's incident. Clearly the jury followed the trial court's instructions of law as to the limited use of other-acts evidence and did not use the evidence as proof of character trait. Obviously, the jury did not use Claire's testimony as proof of character with the propensity to act as a sexual deviant when Schmidt was not found guilty of four out of five of the sexual offenses charged.

{¶37} It seems disingenuous to suggest the jury considered the other-acts evidence as propensity evidence to commit the rape he was found not guilty of committing, or the bathroom incident involving Amber he was found not guilty of committing. Similarly, the same can be said about the public indecency and gross sexual imposition charges involving Beth where the jury rendered no verdict after considerable deliberation. Schmidt's argument focuses exclusively on only one encounter. He attempts to ignore the fact that pending before the trial court were multiple charges, with multiple victims, at the time the

trial court had to determine the admissibility of the other acts evidence.

**{¶38}** In choosing to focus upon only one encounter with one victim, Schmidt downplays the similarities in the testimonies of Amber, Beth, and Claire. Such a limited argument invites this court to put on blinders with regard to the similar charges the trial court had before it when determining Claire's testimony was admissible. That is, the state was attempting to secure convictions involving Beth's claims that Schmidt pulled out his penis and began touching it in the very same basement just months after Schmidt did similarly to Claire (clearly with the specific statutory intent of some sort of gratification). Additionally, the state was also attempting to prove, while near the basement bathroom, with the same specific intent, Schmidt exposed and was touching his penis in front of Amber as he had done approximately four years earlier with Beth.[6]

**{¶39}** By focusing on the single count involving Amber at the basement window, Schmidt, as does our dissenting colleague, fails to adequately examine the other, more similar, offenses. That is, after considering the detailed facts in this case, Schmidt's exposure of his genitalia and touching it in front of Claire was proof that Schmidt had the specific intent or purpose of "personal sexual arousal or gratification." Accordingly, we hold the evidence consisted of a permissible Evid.R. 404(B) purpose, and its admission was not improper.

### E. Other Permissible Purposes – Opportunity, Motive

**{¶40}** With the state required to prove specific intent crimes, intent alone is a permissible purpose for admitting Claire's testimony. Yet the trial court also indicated that

---

6. Schmidt did not argue in his pretrial motion, or at trial, that too much time had passed between Claire's incident and the incidents involving Beth or the incidents involving Amber. Nor did he argue to the trial court that Claire's testimony was prejudicial specifically to the one charge involving Amber of which he was convicted. Schmidt did not argue Amber's different allegations should be tried individually; his motion for severance was only to have all of Beth's allocations tried separately from all of Amber's allegations—and denial of that motion was not argued on appeal.

opportunity was a permissible reason to consider the other-acts evidence. "Opportunity" is a situation that allows for a possible outcome. "Opportunity" is "a set of circumstances providing a chance or possibility." *Webster's Encyclopedia Edition Dictionary* (1987). Beth's similar sexual encounter in the very same basement theatre room as Claire's sexual encounter only months beforehand, is permissible proof of Schmidt's use of the same opportunity to expose himself to an unsuspecting female. Finding nearly identical settings so the same opportunity will exist is a behavioral footprint. Such is offered not for propensity but rather for the common thread as to how and why the setting resulted in a similar occurrence.

{¶41} Schmidt used opportunity to disarm females who saw him with the elevated status of a father and member of the community. The opportunity to isolate and befriend young females allowed him to place each in a sudden, shocking predicament by exposing himself. The logical connection is found in the shared facts and circumstances creating the setting for the opportunity.

{¶42} Additionally, we note this court has previously held that an appellate court shall affirm a trial court's judgment that is legally correct but for other grounds, that is, one that achieves the right result for the wrong reason, when such an error is not prejudicial. *State v. Fannin*, 12th Dist. Warren No. CA2020-03-022, 2021-Ohio-2462, ¶ 27, citing *State v. Payton*, 124 Ohio App.3d 552, 557 (12th Dist.1997) and *State v. Lewis*, 9th Dist. Summit No. 29696, 2021-Ohio-1575, ¶ 16 (other-acts evidence was admissible for alternative reason). In *Fannin*, the same panel as here, acknowledged that although the purpose offered at trial was improperly relied upon, on appeal we could find that a different purpose would have been a permissible purpose. In so finding, we determined prejudice to the defendant did not exist. *Fannin* at ¶ 28.

{¶43} Bearing the above in mind, we also note another non-propensity reason for

admitting Clair's encounter is "motive." "Motive evidence establishes that the accused had a specific reason to commit a crime." *Id.* The other-acts evidence and the evidence of the charged offense must relate a logical connection which "may reasonably disclose a motive or purpose for the commission of such offense." *State v. Blankenburg*, 12th Dist. Butler No. CA2010-03-063, 2012-Ohio-1289, ¶ 83

{¶44} *Hartman* indicates it can be a thin line as to when other acts evidence is admissible and when it is not. *Hartman,* 2020-Ohio-4440 at ¶ 57. That thin line can be observed when attempting to discern permissible motive evidence from impermissible propensity evidence. Motive is what induces an act, the moving power that seeks a result. *Blankenburg* at ¶ 82. The conduct involved in other-acts evidence helps to explain why the offense charged took place. *Id.* at ¶ 85.

{¶45} Said differently, motive is that sense of need or desire that prompts a person to act. *Webster's Encyclopedia Edition Dictionary* (1987). On the other hand, impermissible evidence of "trait of character" relates to the quality of a person's behavior as revealed by distinguishing features or characteristics. *See Hartman* at ¶ 36-39*.* Traits of character are found in words that describe a person's values or personality. The more similarity of detail in the behavior, the more a trier of fact derives an understanding or explanation as to why actor is compelled to act.

{¶46} *Hartman* explains sexual acts that are distinct in facts and circumstances may not have a common motive that induces the act or reveals a common moving power for commission of the acts and that the details govern. Here, Schmidt's identity is not disputed in either the extrinsic other act involving Claire or the charged offenses. Schmidt's defense never contested his presence in the situations alleged. His defense was only that the girls were lying because the exposure of his genitals never occurred. The commonality in circumstances and the similarity in the acts alleged with an identical motive for repeatedly

exposing himself gives another purpose to the other-acts testimony.

**{¶47}** Motive would have been a permissible reason to admit Claire's other-act testimony, not for the propensity of a trait of character, but to explain why Schmidt was moved to expose his genitals. The motive in Claire's incident, to seek sexual arousal or gratification, was offered as the same motive in an incident involving Amber and Beth. Thus, Evid.R. 404(B) expressly permits extrinsic evidence as to motive in certain circumstances which is not automatically excluded simply because motive is not an element of the crime. In this particular set of circumstances, the specific intent and motive appear to be one and the same.

**{¶48}** *Hartman* gives guidance upon which our de novo review relies when examining the specific facts and circumstances. We reject Schmidt's argument that Claire's other-acts testimony was not admitted for a permissible purpose.

### F. Possibility of Propensity Mitigated

**{¶49}** The fact that Schmidt was not convicted on most of the charges does not mean there was no permissible purpose for admission of the Evid.R. 404 (B) evidence during trial. It means, however, the jury listened astutely to the trial court's instructions of law to consider the charges separately and only to consider the other-acts testimony for a limited purpose. After the cautionary instructions given during the trial, the court's final instructions emphasized that the other-acts testimony

> cannot be considered for any other purpose than the purposes that I've just described to you. It was not received, and you may not consider it to prove the character of the defendant in order to show that he acted in conformity with that character * * *. It does not follow from the defendant's past acts that he committed the particular crimes charged in this case. * * * The state cannot satisfy its burden merely by implying that the defendant committed these crimes because his other acts suggest a propensity to commit crimes.

The trial court stressed, "each count of the indictment constitutes separate and distinct matters" and instructed the jury they "must consider each count and the evidence applicable to each count separately."

**{¶50}** Clearly the jury did not consider the allegations of Schmidt's other bad acts or wrongs as propensity evidence. If so, they would have convicted Schmidt of more than just one offense. Schmidt's situation is similar to those where the jury hears testimony of the defendant's other bad acts, yet the defendant is acquitted of some charges but not all the charges. *State v. Stober*, 3d Dist. Putnam No. 12-13-09, 2014-Ohio-1568, ¶ 101 (where the defendant was acquitted of some of the accusations it showed the evidence was simple and direct and the jury was able to segregate the proof as going to separate offenses – there was no showing of prejudice where the jury was able to discern the separate crimes and was not biased by testimony from the other incidents); *State v. Martin*, 11th Dist. Lake No. 2003-L-143, 2005-Ohio-688, ¶ 66 (where the evidence was separate and distinct "we may conclude that the jury followed the court's instruction to consider each count separately.").

**{¶51}** Here the evidence was simple and direct. The jury was able to separate the proof as going to the individual offenses. We presume the jury followed the trial court's instructions of law. *State v. Ireland*, 155 Ohio St.3d 287, 2018-Ohio-4494, ¶ 45 ("The jury is presumed to have followed the court's instructions."). The jury's verdicts confirm the instructions of law were taken seriously and thoughtfully applied. The risk the jury might consider the other-acts testimony as propensity evidence was sufficiently mitigated by the trial court's thorough instructions and admonitions to the jury.

### G. Weighing the Probative Value and Danger of Unfair Prejudice

**{¶52}** Schmidt also argues that the probative value of the prior act involving Claire was substantially outweighed by the danger of unfair prejudice. There is no denying that

Claire's testimony was not favorable to Schmidt. *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 107. Yet not all evidence is unfairly prejudicial. *State v. White*, 12th Dist. Warren No. CA2018-09-107, 2019-Ohio-4312, ¶ 31. "Under Evid.R.403(A), only evidence that is unfairly prejudicial is excludable." *State v. Smith*, 12th Dist. Butler No. CA2008-03-064, 2009-Ohio-5517, ¶ 60. "Unfairly prejudicial evidence is not merely unfavorable evidence; rather, it is evidence, which might result in an improper bias for a jury decision." *State v. Mills*, 12th Dist. Clermont No. CA2015-12-101, 2016-Ohio-6985, ¶ 18.

{¶53} "Weighing the probative value of the evidence against its prejudicial effect is a highly fact-specific and context-driven analysis." *Hartman*, 2020-Ohio-4440 at ¶ 30. Here, the trial court found the probative value of Claire's testimony was not substantially outweighed by the danger of unfair prejudice to Schmidt. The trial court provided cautionary instructions to the jury and discussed the limited use of other-acts testimony. It also instructed the jury that other-acts evidence cannot be considered for any other purpose or to prove the character of the defendant to show that he acted in conformity with that character. *State v. Vunda*, 12th Dist. Butler Nos. CA2012-07-130 and CA2013-07-113, 2014-Ohio-3449, ¶ 73 (there is a presumption that jurors follow the instructions given by the trial court).

{¶54} The trial court did not abuse its discretion in determining Claire's testimony was admissible for establishing intent and that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Schmidt was not unfairly prejudiced by evidence offered for a permissible purpose. After reviewing the testimony there is nothing to suggest the jury's decisions which found Schmidt not guilty of two counts, decided not to reach a verdict on two counts, and found Schmidt guilty on only one count, were the result of an improper bias. We decline the dissent's invitation to climb into the minds of the jurors and speculate that Schmidt was prejudiced despite a record that

indicates differently. The trial court was not unreasonable, arbitrary, or unconscionable when it determined that the probative value of the other-acts evidence was substantially outweighed by the danger of unfair prejudice. Therefore, the trial court did not abuse its discretion in the admission of Evid.R. 404(B) evidence.

{¶55} As Schmidt's first assignment of error lacks merit, it is overruled.

{¶56} Assignment of Error No. 2:

{¶57} THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO PROVE SCHMIDT'S GUILT BEYOND A REASONABLE DOUBT.

{¶58} Assignment of Error No. 3:

{¶59} SCHMIDT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶60} In his second and third assignments of error, Schmidt argues that his conviction was based on insufficient evidence and the jury's verdict was against the manifest weight of the evidence.

{¶61} The concepts of sufficiency of the evidence and weight of the evidence are legally distinct. *State v. Palmer*, 12th Dist. Clermont No. CA2021-07-035, 2022-Ohio-2181, ¶ 32. Nonetheless, as this court has observed, a finding that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19. "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43.

{¶62} A manifest weight challenge scrutinizes the proclivity of the greater amount of credible evidence, offered at a trial, to support one side of the issue over another. *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. In assessing whether

a conviction is against the manifest weight of the evidence, a reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

**{¶63}** Gross sexual imposition is defined in R.C. 2907.05, which states:

> (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
> * * *
>
> (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

**{¶64}** The Revised Code defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

**{¶65}** In the matter sub judice, the state presented evidence that Schmidt touched 12-year-old Amber's vagina under her underwear for purposes of sexual gratification. Amber testified that Schmidt lifted her up in the basement and, in the process, Schmidt's hand went up her shorts, under her underwear, touching her vaginal area. Schmidt then grabbed her by the chest and lowered her to the floor. Amber confirmed that Schmidt specifically touched her clitoris. While he argues that his thumb only slipped up her leg, the jury, as trier of fact, was in the best position to weigh the credibility of individual witnesses and reach a conclusion based on the totality of the evidence. *State v. Kersbergen*, 12th

- 21 -

Dist. Butler No. CA2014-10-218, 2015-Ohio-3103, ¶ 29; *State v. B.J.T.*, 12th Dist. Warren No. CA2016-12-106, 2017-Ohio-8797, ¶ 33-34.

{¶66} Schmidt's argument that he did not touch Amber's private area with purpose of sexual gratification was rejected by the jury. *State v. Williams*, 12th Dist. Warren No. CA2012-08-080, 2013-Ohio-3410, ¶ 33. We similarly find the argument unpersuasive as evidence exists supporting the manifest weight of the evidence. The jury's verdicts reveal a serious consideration of numerous charges, and a thorough examination of the evidence as applied to each charge individually. After reviewing the record, we find that the jury did not clearly lose its way or create such a manifest miscarriage of justice such that a new trial must be ordered. As such, Schmidt's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. Schmidt's second and third assignments of error are overruled.

{¶67} Judgment affirmed.

BYRNE, J., concurs in part and concurs in the judgment in part.

M. POWELL, P.J., dissents.

**BYRNE, J., concurring separately.**

{¶68} With respect to the majority opinion's decision to overrule Assignment of Error No. 1, I concur in the judgment. At the time Claire's testimony was admitted, all the charges against Schmidt were pending before the court. Two of those charges, public indecency and gross sexual imposition, are specific-intent crimes. R.C. 2907.09(B)(4), public indecency, requires that the state prove that the defendant committed the crime with the specific "purpose of personal sexual arousal or gratification." R.C. 2907.05(A)(4), gross sexual imposition, requires that the state prove that the defendant engaged in "sexual contact" with a person less than thirteen years of age, where "sexual contact" is defined by

R.C. 2907.01(B) as being performed for the specific "purpose of sexually arousing or gratifying either person." I conclude that Claire's testimony was admissible in these circumstances based on *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440. In *Hartman*, the Ohio Supreme Court explained that other-acts evidence is not normally admissible for proving intent "when 'the requisite intent is presumed or inferred from proof of the criminal act itself.'" *Id.* at ¶ 55, quoting 1 *Wharton's Criminal Evidence*, Section 4:31 (15th Ed.2019). Yet the supreme court qualified this statement further by concluding that "When a defendant is charged with a specific-intent crime, however, the specific intent becomes a material issue in the case" and prior-acts evidence is admissible to prove specific intent. *Id.* Such is the case here. I therefore agree with the majority opinion's analysis regarding intent and its overruling of Assignment of Error No. 1.

{¶69} Having determined that Claire's testimony was admissible under Evid.R. 404(B) to prove intent, I conclude there is no need to determine whether Claire's testimony was also admissible under Evid.R. 404(B) to prove opportunity or motive. I therefore do not join the majority's analysis regarding motive and opportunity.

{¶70} With respect to Assignment of Error No. 2 and Assignment of Error No. 3, I fully concur with and join the majority opinion.

{¶71} For these reasons, I respectfully concur in part and concur in the judgment in part.

**M. POWELL, P.J., dissenting.**

### I. INTRODUCTION.

{¶72} The trial court erred to the prejudice of Schmidt by admitting Claire's testimony concerning an uncharged instance of public indecency by Schmidt. This testimony did not serve legitimate Evid.R. 404(B) purposes, related to undisputed and immaterial issues, and

gave rise to improper propensity inferences. This evidence does not satisfy the three-step analysis set out in *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, and should have been excluded.

## II. 404(B) EVIDENCE-PRELIMINARY CONSIDERATIONS.

{¶73} The general rule regarding admissibility of other-acts evidence is set forth in Evid.R. 404(B)(1), which provides that "[e]vidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." "A hallmark of the American criminal justice system is the principle that proof that the accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime." *State v. Curry*, 43 Ohio St.2d 66, 68 (1975). However, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid.R. 404(B)(2). In *Williams*, the Ohio Supreme Court established a three-prong test for the determination of the admissibility of other-acts evidence:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R 403.

*Williams* at ¶ 20.

{¶74} The *Williams* relevancy prong concerns "not whether the other-acts evidence is relevant to the ultimate determination of guilt * * * [but] whether the evidence is relevant *to the particular purpose* for which it is offered." (Emphasis sic.) *State v. Hartman*, 161

Ohio St.3d 214, 2020-Ohio-4440, ¶ 26. Furthermore, the other-acts evidence must not only be relevant to an Evid.R. 404(B) purpose but also "must go to a 'material' issue that is actually in dispute between the parties." *Id.* at ¶ 27. Thus, the relevancy of other-acts evidence hinges upon three factors. The evidence must serve to prove an Evid.R. 404(B) purpose and relate to an issue that is both (a) material and (b) disputed.

**{¶75}** The *Williams* probative value versus the prejudicial effect prong is closely related to the relevancy determination and involves a consideration of whether the purpose for which the evidence is offered is a disputed issue in the case. "The probative value of the evidence, as well as whether any prejudice is unfair, will generally depend on the degree to which the fact is actually contested." *Id.* at ¶ 31. "If the fact that the proponent seeks to prove by way of other acts is not genuinely disputed or material to the case, then it has little probative value and the risk of prejudice is high. As the importance of the factual dispute for which the evidence is offered to the resolution of the case increases, the probative value of the evidence also increases and the risk of *unfair* prejudice decreases." (Emphasis sic.) *Id.*

### III. DISCUSSION.

### A. THE CHARGES AGAINST SCHMIDT.

**{¶76}** Schmidt was indicted for rape, gross sexual imposition, and public indecency involving Amber. All three offenses were alleged to have occurred on September 7, 2019, during an Ohio State football game watch party at Amber's home. The rape offense related to Schmidt allegedly digitally penetrating Amber's vagina when he was with her in her brother's bedroom.[7] The gross sexual imposition offense related to Schmidt allegedly

---

7. Neither the state nor the majority rely upon the rape offense involving Amber as providing a basis for the admissibility of Claire's testimony as Evid.R. 404(B) evidence. Thus, this dissent will not analyze the issue with reference to the rape offense against Amber.

touching Amber's genitals as he lifted her to look out of the basement window at some commotion occurring outside. The public indecency charge related to Schmidt allegedly exposing himself and masturbating in front of Amber when he was alone with her and had backed her into a basement bathroom. The jury acquitted Schmidt of the rape and public indecency charges and found him guilty of the gross sexual imposition offense.

{¶77} Schmidt was also indicted for gross sexual imposition and public indecency involving Beth.[8] These incidents were alleged to have occurred on April 17, 2015, when Beth was a guest at Schmidt's home visiting with Schmidt's daughter. The gross sexual imposition and public indecency charges relate to Schmidt allegedly touching Beth's breast in his theatre room and exposing himself and masturbating in front of Beth while his daughter was asleep beside Beth. The jury was unable to reach a verdict on either charge. Schmidt was eventually found guilty of the public indecency charge pursuant to his no contest plea and the gross sexual imposition offense was dismissed.

{¶78} Claire testified that Schmidt exposed himself to her when she was alone with him in his theatre room in early 2015. This incident with Claire is similar to the public indecency charges involving Amber and Beth but dissimilar from the gross sexual imposition charge involving Amber. The majority remarks that Schmidt's argument focuses on the admissibility of Claire's testimony as proper Evid.R. 404(B) evidence relating to the gross sexual imposition charge involving Amber and ignores whether Claire's testimony was proper Evid.R. 404(B) evidence vis-à-vis the public indecency charges involving Amber and Beth. Schmidt likely focuses upon the gross sexual imposition charge because it was the only offense upon which the jury returned a guilty verdict and was the state's focus

---

8. Neither the state nor the majority rely upon the gross sexual imposition offense involving Beth as providing a basis for the admissibility of Claire's testimony as Evid.R. 404(B) evidence. Thus, this dissent will not analyze the issue with reference to the gross sexual imposition offense involving Beth.

below. The state argued during the jury instruction conference that Claire's testimony was admissible to counter any claim that Schmidt's touching of Amber's genitals was the product of accident or mistake, and in closing argument told the jury that Claire's testimony could be considered in deciding that Schmidt's touching of Amber was not "just an accident or something." Furthermore, the state conceded during oral argument that Claire's testimony would probably have been inadmissible had Schmidt faced trial only on the public indecency charges.

{¶79} Nonetheless, when the trial court was faced with determining the admissibility of Claire's testimony, Schmidt was on trial for two counts of gross sexual imposition, two counts of public indecency, and a single count of rape. Thus, the trial court had to resolve the admissibility question with reference to all charges, including the public indecency charges. The majority opinion primarily analyzes the issue of the admissibility of Claire's testimony within the context of the public indecency charges.

### B. THE EVID.R. 404(B) PURPOSES OF CLAIRE'S TESTIMONY.

{¶80} The trial court's final instruction to the jury was that it could consider Claire's testimony as proof of Schmidt's opportunity and intent and as proof of the absence of accident or mistake. The majority upholds the admission of Claire's testimony as proof of intent, opportunity, and motive.

### 1. INTENT.

{¶81} Because of the similarity of the public indecency charges involving Amber and Beth to the incident described in Claire's testimony, the majority holds that Claire's testimony was admissible to prove that Schmidt exposed himself and masturbated in front of Amber and Beth with the specific intent to achieve "personal sexual arousal or gratification."

{¶82} As observed by the majority, the offenses of public indecency and gross

sexual imposition are specific intent crimes because each requires proof that the offender acted for the purpose of achieving sexual arousal or gratification. Thus, this specific intent was a material issue in the case. *Hartman*, 2020-Ohio-4440 at ¶ 55. Nonetheless, just because an issue is a material issue, "it does not follow" that the other-acts evidence is admissible. *Id.* at ¶ 60. "[T]o be admissible, the other-acts evidence must be relevant to the specific intent and relevant in a permissible way." *Id.* at ¶ 55.

{¶83} Schmidt does not claim, and the record does not suggest, that mistake or accident was an issue in the adjudication of the public indecency charges. For instance, Schmidt never advanced a claim that exposing himself and masturbating in front of Amber and Beth was anything more than it appeared. Schmidt did not suggest that he was scratching himself, urinating, or doing something similar that the victims misinterpreted. Schmidt never claimed that he thought he was masturbating privately and was suddenly discovered by the girls. Schmidt's defense was that Amber and Beth were lying and that he did not do what they accused him of doing.

{¶84} Had Schmidt claimed that he was engaged in some innocent act that Amber and Beth walked-in on or misconstrued as public indecency, Claire's testimony might have been admissible to rebut that suggestion because "'the oftener a like act has been done, the less probable it is that it could have been done innocently.'" *Hartman* at ¶ 56, quoting *State v. Evers*, 139 Wis.2d 424, 437 (1987). However, because neither accident nor mistake were issues in the case, much less disputed issues, Claire's testimony was unnecessary to address accident/mistake issues. The majority does not contend otherwise.

{¶85} As opposed to rebutting any suggestion of accident or mistake, the majority holds that Claire's testimony was admissible to prove an element of the offenses, i.e., Schmidt's specific intent to achieve sexual arousal or gratification. Claire's testimony provided no probative evidence of Schmidt's sexual purpose in exposing himself to Amber

and Beth because his intent was apparent from his acts and undisputed. "[I]ntent evidence is not admissible when 'the requisite intent is presumed or inferred from proof of the criminal act itself,' or when intent is not in issue at all, such as when the defense theory is that the act never occurred." *Hartman*, 2020-Ohio-4440 at ¶ 55, quoting 1 *Wharton's Criminal Evidence*, Section 4:31 (15th Ed.2019). Achieving sexual gratification is implicitly obvious in the act of masturbating. Masturbation is "the manipulation of genital organs for sexual gratification by means other than sexual intercourse." *Columbus v. Heck*, 10th Dist. Franklin No. 98AP-1384, 1999 Ohio App. LEXIS 5257, *14 (Nov. 9, 1999). "Neither that definition nor the common, ordinary meaning of the term masturbation requires any expressed or observed sexual gratification that indicates the individual is finding pleasure. Rather, sexual gratification is the motivation for engaging in that behavior. That motive reasonably can be inferred whenever a person engages in that conduct, as Defendant did here." *State v. Johnson*, 2d Dist. Montgomery No. 21335, 2006-Ohio-4935, ¶ 20. We have observed that proof of a purpose to achieve sexual arousal or gratification is to be "inferred from the type, nature, and circumstances [of the offense]." *State v. Gesell*, 12th Dist. Butler No. CA2005-08-367, 2006-Ohio-3621, ¶ 25. Amber and Beth each testified that Schmidt isolated them, exposed his penis, and rubbed it. If the jury believed that these acts occurred, the only inference which may be drawn from the descriptions of the conduct is that they were done with a sexual motivation. Claire's testimony did not make Schmidt's sexual intent in the incidents with Amber and Beth more apparent. Moreover, any marginal probative value that Claire's testimony may have as proof of the obvious sexual motivation in Schmidt's conduct with Amber and Beth, was substantially outweighed by the danger that the jury would draw unfair propensity inferences from the evidence.

{¶86} Claire's testimony does not advance the state's claim that Schmidt exposed himself to Amber and Beth to achieve sexual arousal or gratification. Schmidt's intent was

manifest in his conduct with Amber and Beth. Claire's testimony neither clarifies Schmidt's purpose in exposing himself to Amber and Beth nor make it more likely that he did so to achieve sexual arousal or gratification. Claire's testimony concerned only an additional instance of the same conduct Schmidt was alleged to have engaged in with Amber and Beth. Schmidt's conduct with each of the three girls gives rise to the same inference regarding his purpose in masturbating in front of them. The only tendency of Claire's testimony was to show that Schmidt was disposed to expose himself to young females to achieve sexual arousal or gratification—in other words, propensity evidence.

## 2. OPPORTUNITY.

{¶87} Opportunity evidence relates to evidence of "other acts" of the accused which tend to show that he had the means to commit the crime. "Evidence used to establish opportunity is evidence that shows 'access to or presence at the scene of the crime' or the possession of 'distinctive or unusual skills or abilities employed in the commission of the crime charged.'" *United States v. Jobson*, 102 F.3d 214, 221 (6th Cir.1996), quoting 1 *McCormick*, Evidence Section 190, at B7 (4th Ed.1992). Opportunity evidence has been ruled admissible in cases where there is a disputed issue regarding whether an accused has access to the instrumentality used in the crime or to the place, person, or circumstances involved in the crime. *See State v. Bucklew*, 5th Dist. Stark No. 2004CA00262, 2005-Ohio-1942 (testimony that an accused was seen operating a vehicle under suspension was admissible to prove the accused had access to the vehicle and operated it under suspension on the prior day); *State v. Davis*, 9th Dist. Lorain No. 88CA004390, 1990 WL 49985 (Apr. 14, 1990) (testimony of uncharged crimes and other acts by an accused admissible to prove the accused's presence in Ohio at the time murders were committed to establish the accused's opportunity to commit the murders); *State v. Eustice*, 1st Dist. Hamilton No. C-870670, 1988 WL 75775 (Oct. 5, 1988) (evidence of prior unruly parties at

a home admissible to establish the accused was in charge of the home in a prosecution for keeping a disorderly house); *State v. Smith*, 7th Dist. Mahoning No. 99 CA 256, 2001 Ohio App. LEXIS 2976 (June 26, 2001) (testimony concerning the accused's ownership of guns admissible in murder prosecution to show the accused had the means and opportunity to commit the murders); and *State v. Sabbah*, 6th Dist. Erie No. E-94-031, 1995 WL 490940 (Aug. 18, 1995) (evidence that the accused had physically abused his female partner when she did not do as told admissible to prove the accused had the opportunity to manipulate his partner into aiding him in the commission of the murder).

{¶88} Admission of Claire's testimony as opportunity evidence was prejudicial error because: Claire's testimony does not qualify as opportunity evidence; Schmidt's opportunity to commit the public indecency charges against Amber and Beth was undisputed; and Claire's testimony permitted the jury to draw impermissible inferences concerning Schmidt's propensity to expose himself to young females.

{¶89} First and foremost, Claire's testimony is not relevant to an Evid.R. 404(B) purpose because it is not Evid.R. 404(B) opportunity evidence. The Claire, Beth, and Amber incidents were separate occurrences. Unlike the cases cited above describing circumstances under which other-acts evidence is admissible to prove opportunity, evidence of the incident with Claire is not proof that Schmidt had the opportunity to expose himself to Amber or Beth.

{¶90} Furthermore, Schmidt's opportunity to commit the crimes was not a disputed issue during the trial. There was no question that Beth was a guest at Schmidt's home on April 17, 2015, and that Schmidt and Beth were together in Schmidt's theatre room. There was no question that Schmidt was at Amber's home on September 7, 2019, and with her in the basement of her home. The majority notes as much in observing that "Schmidt's defense never contested his presence in the situations alleged." The evidence was

uncontroverted that Schmidt had the means and opportunity to commit the offenses involving Amber and Beth. Pursuant to *Hartman*, this alone is enough to render Claire's testimony inadmissible because it is not relevant to Schmidt's opportunity to commit the offense and its probative value is substantially outweighed by the danger of unfair prejudice.

**{¶91}** The majority opinion holds that Claire's testimony was admissible as opportunity evidence based upon the similarity of the circumstances under which Schmidt exposed himself to Claire and Beth.[9] The majority asserts that Claire's testimony proves that Schmidt uses "the same opportunity to expose himself to unsuspecting females" and that the "nearly identical set of circumstances" involved in the Claire and Beth incidents is a "behavioral footprint."

**{¶92}** Although the majority characterizes Claire's testimony as opportunity evidence, it is in fact, modus operandi evidence. The gist of the majority's analysis is that the manner in which Schmidt commits these offenses is by taking advantage of circumstances where he finds himself isolated with young females to expose himself and masturbate in front of them. "'Modus operandi' literally means method of working." *Hartman*, 2020-Ohio-4440 at ¶ 37. "It is evidence of signature, fingerprint-like characteristics unique enough 'to show that the crimes were committed by the same person.'" *Id.*, quoting Weissenberger, *Federal Evidence*, Section 404.17 (7th Ed.2019). "Evidence of modus operandi is relevant to prove identity: 'Evidence that the defendant had committed uncharged crimes with the same peculiar modus tends to identify the defendant as the perpetrator of the charged crime.'" *Id.* quoting 1 Imwinkelried et. al., *Courtroom Criminal Evidence*, at Section 907. However, identity is not a disputed issue in this case

---

9. In discussing whether Claire's testimony is proper opportunity evidence, the majority focuses on the public indecency offense involving Beth. The public indecency offense involving Amber was more distinct from the incident with Claire but is broadly similar. The discussion here applies equally to whether Claire's testimony was admissible as opportunity evidence relating to the public indecency offense involving Amber.

thus rendering Schmidt's "behavioral footprint" irrelevant.

**{¶93}** The effect of Claire's testimony was to show that because Schmidt had committed the offense with Claire it was likely that he committed the offense involving Beth. In other words, Claire's testimony was propensity evidence.

### 3. MOTIVE.

**{¶94}** The trial court did not instruct the jury that it could consider Claire's testimony as evidence of Schmidt's motive. Nor did the state advance on appeal that motive was an Evid.R. 404(B) purpose rendering Claire's testimony admissible. Nonetheless, the majority cites motive in holding that Claire's testimony was properly admitted.

**{¶95}** "Motive evidence establishes that the accused had a specific reason to commit a crime." *Hartman*, 2020-Ohio-4440 at ¶ 48. As examples of admissible motive evidence, the supreme court noted that evidence that an accused had committed murder to cover up an earlier crime would support admission of evidence of the earlier crime as supplying the motive to commit murder; and evidence that an accused's motive in committing a theft offense was to sell the stolen items to buy drugs is admissible to prove the motive in the commission of the theft offense. *Id.* That is, evidence of "other acts" is admissible where those "other acts" supply the motive for the commission of the crime for which the accused is on trial.

**{¶96}** First and foremost, Claire's testimony is not Evid.R. 404(B) motive evidence. *Hartman* explained that the proper use of Evid.R. 404(B) motive evidence is to show that commission of another crime supplied the motive for commission of the crime for which the accused is on trial. There is nothing in the record of this case suggesting that Schmidt's exposing himself to Claire provided him with a motive to expose himself to either Amber or Beth.

**{¶97}** Moreover, Schmidt's motive was not a disputed issue in the case and his

- 33 -

motive was implicit in his conduct. In *Hartman*, the supreme court rejected as motive evidence testimony that Hartman had sexually molested his stepdaughter, to prove his motive to rape an adult woman some years later. The supreme court stated that the evidence "does not provide evidence of any motive to commit rape beyond that which can be inferred from the commission of any rape." *Hartman*, 2020-Ohio-4440 at ¶ 49. The supreme court went on to summarize by stating, "the point is that in most [sex offense] cases * * *, there is no motive beyond that implicit in the commission of the offense itself." *Id.* at ¶ 50.

{¶98} As indicated, the sexual motive in the commission of sex offenses is obvious and inferable from the commission of the crimes themselves. Besides the obvious sexual motive involved in the offenses, Schmidt did not dispute that he acted with a sexual motive. Schmidt never suggested that he did not commit the offenses because he was not sexually attracted to young females, was too reserved to expose himself to another, was doing something else that was misinterpreted as masturbation, or was surprised during a private moment.

{¶99} Neither was Schmidt's motive in exposing himself to Amber and Beth a material issue in the case. Unlike specific intent, motive is not a material issue in a criminal case. Motive is not an element of any of the offenses with which Schmidt was charged and the state had no legal burden to prove Schmidt's motive.

{¶100} The majority does not contend that the incident with Claire supplied Schmidt with a motive to commit the offenses against Amber and Beth. On the contrary, the majority's contention is that Claire's testimony is admissible to prove Schmidt's motive in committing the offenses against Amber and Beth because the incident involving Claire was committed with the same motive. As the majority puts it, "the motive in Claire's incident, to seek sexual arousal or gratification, was offered as the same motive in an incident involving

Amber and Beth." The majority draws the obvious and correct inference from each of the three instances of public indecency that Schmidt does so for purposes of sexual arousal or gratification. In this sense, the incident with Claire proves nothing more concerning Schmidt's motive in exposing himself to Amber and Beth than the motive apparent in those acts. Reduced to its essence, the majority holds that Claire's testimony was admissible to prove that Schmidt's disposition to expose himself to young females is driven by a singular sexual motive—in other words, propensity evidence.

{¶101} The incident with Claire did not supply Schmidt with a motive to expose himself to Amber and Beth. Schmidt's motive was neither a disputed nor a material issue at trial. Claire's testimony was simply one more instance of similar conduct, committed with the same motive as the public indecency charges involving Amber and Beth, thereby permitting the jury to improperly infer that Schmidt has a propensity of exposing himself to young females.

### C. THE GROSS SEXUAL IMPOSITION OFFENSE INVOLVING AMBER.

{¶102} Schmidt was found guilty of gross sexual imposition involving Amber. The allegations were that Schmidt fondled Amber's genitals as he picked her up to see out of the basement window. The majority mentions the gross sexual imposition offense a couple of times in passing but analyzes whether Claire's testimony was admissible primarily within the context of the public indecency charges involving Amber and Beth. It is unclear to me whether the majority is holding that Claire's testimony is admissible under Evid.R. 404(B) as it relates to the gross sexual imposition offense involving Amber.

{¶103} Clearly, the majority's reliance upon opportunity as a basis for admission of Claire's testimony was restricted to the public indecency charge involving Beth as the offenses occurred under similar circumstances. Suffice it to say, the discussion of opportunity and motive as a basis for admission of Claire's testimony as it related to the

public indecency charge involving Beth applies equally to opportunity and motive as a basis for admission of Claire's testimony as it relates to the gross sexual imposition offense involving Amber. There is no aspect of Claire's testimony that relates to whether Schmidt had the opportunity to commit gross sexual imposition against Amber or that proves Schmidt's motive to commit that offense.

{¶104} The marked dissimilarity of the incident with Claire from the gross sexual imposition with Amber disqualifies Claire's testimony as proper Evid.R. 404(B) intent evidence in the gross sexual imposition case. Amber and Claire are not in the same class of victims; Amber was a pre-adolescent and Claire was a young adult at the time of the respective incidents. The incident with Claire occurred in Schmidt's home and that with Amber in her home. Furthermore, there is no similarity in the acts done with Amber (i.e., sexual contact) and those with Claire (exposing himself) other than being sexual in nature. The supreme court has noted that other-acts evidence is admissible as proof of intent, accident, and absence of mistake where the other acts were committed in such similar circumstances as to give rise to the "permissible inference" that "the oftener a like act has been done, the less probable it is that it could have been done innocently." *Hartman*, 2020-Ohio-4440 at ¶ 56. However, exposing himself to another adult and fondling the genital region of a 12-year-old child are not "like acts" such as to give rise to this "permissible inference."

{¶105} *Hartman* presents a clear example of this principle in practice. Unlike here, where Schmidt makes no claim of accident or mistake, Hartman claimed he did not intend to commit rape because he mistakenly believed the sex was consensual. Despite Hartman's claim of mistake, the supreme court held that the other-acts evidence was improperly admitted. The supreme court observed that the victims were dissimilar (i.e., a child relative vs. an adult acquaintance) and the acts involved were dissimilar other than

both being sexual in nature. *Id.* at ¶ 62. The supreme court found there was no temporal, modal, or situational relationship between the two incidents and emphasized that

> [e]vidence that Hartman, while in his own residence, had molested his 12-year-old stepdaughter by touching her chest and vagina and placing her hand on his penis does not support an inference that Hartman entered E.W.'s hotel room with the intent to rape her while she was intoxicated. E.W. and B.T. are not in the same class of victims: one is an adult acquaintance, the other was a child relative. The acts Hartman allegedly forced E.W. to perform bear no similarities to the acts involving B.T. other than being sexual in nature. Without more, the fact that all the acts occurred at night in the victims' sleeping quarters does not provide the degree of similarity necessary to infer intent. The child-molestation evidence presented in this case simply was not probative of Hartman's intent with respect to the hotel-rape allegations.

*Id.*

{¶106} In this case, not only did Claire's testimony concern a dissimilar incident, but there was no claim of accident or mistake to rebut as there was in *Hartman*. Therefore, Claire's testimony was not admissible under Evid.R. 404(B) as related to the gross sexual imposition charge involving Amber.

### D. THE JURY'S VERDICTS.

{¶107} The majority suggests, without explicitly stating as much, that any error in the admission of Claire's testimony was harmless error because the jury's verdicts reflect it was not unduly influenced by Claire's testimony. Specifically, the majority asserts that Claire's testimony was most salient to the public indecency charges involving Amber and Beth and that Schmidt was acquitted of one of those charges and the jury was unable to reach a verdict on the other.

{¶108} However, we do not know what factors the jury relied upon or struggled with in convicting Schmidt of gross sexual imposition, acquitting him of one count of public indecency and rape, and failing to reach a verdict on other counts of gross sexual imposition

and public indecency. A jury's verdict is not monolithic in the sense that it represents a consensus on anything other than the result. As we have observed, "Courts have always resisted inquiring into a jury's thought processes. This deference to the jury 'brings to the criminal process, in addition to the collective judgment of the community, an element of needed finality.'" *State v. Brown*, 12th Dist. Butler No. CA2006-10-247, 2007-Ohio-7070, ¶ 41, quoting *United States v. Powell*, 469 U.S. 57, 67, 105 S.Ct. 471 (1984). "[I]t is not for an appellate court to speculate as to why the jury decided as it did[.]" *State v. Standifer*, 12th Dist. Warren No. CA2011-07-071, 2012-Ohio-3132, ¶ 44. Thus, we should not and cannot speculate or draw conclusions regarding the jury's verdict as a whole because we cannot know what factors each of the 12 jurors relied upon in collectively agreeing or failing to agree on a verdict.

**{¶109}** What we do know is that the jury convicted Schmidt of gross sexual imposition involving Amber and that the state specifically asked the jury to do so based upon Claire's testimony. In closing argument, the state told the jury,

> It's because you've heard this argument apparently that [Amber]'s telling the truth that his hands slipped up and his thumb went up her pants. That's enough for GSI by the way, up her pants, up her thighs, right? So that was just an accident or something. That's why you hear from [Claire] and [Beth] and why their evidence relates to his behavior. Because what you see from those other two is that wasn't what was going on in that mind.

**{¶110}** Thus, we should not speculate as to why the jury reached the conclusions it did in evaluating whether the admission of Claire's testimony unfairly prejudiced Schmidt.

## IV. CONCLUSION.

**{¶111}** Claire's testimony serves as neither motive nor opportunity evidence because the incident with Claire did not provide Schmidt with a motive to expose himself to Amber or Beth or establish that he had the opportunity to do so. There was no dispute that Schmidt

had the opportunity to expose himself to Amber and Beth on September 7, 2019, and April 17, 2015, respectively. As accident and mistake were not issues in the case, Schmidt's intent and motive to achieve sexual arousal and gratification by exposing himself to Amber and Beth were implicit and obvious in his conduct and were not disputed issues in the case. Likewise, Claire's testimony serves as neither motive nor opportunity evidence regarding the gross sexual imposition offense involving Amber because no aspect of Claire's testimony relates to whether Schmidt had the opportunity to commit gross sexual imposition against Amber or proves Schmidt's motive to commit that offense.

{¶112} Nor was Claire's testimony proper Evid.R. 404(B) intent evidence regarding the gross sexual imposition offense involving Amber. As discussed, Schmidt made no claim that the gross sexual imposition offense arose from accident or mistake. Much like the scenario in *Hartman*, the probative value of Claire's testimony was substantially outweighed by the danger of unfair prejudice because it concerned an incident involving a different class of victim, a different act, and a different setting than the gross sexual imposition offense involving Amber. The only tendency of Claire's testimony was to introduce an additional act of Schmidt's sexually deviant behavior to permit the jury to infer that Schmidt had a propensity to commit sexual offenses against young females. Admission of Claire's testimony therefore was prejudicial error.

{¶113} The trial court abused its discretion in admitting Claire's testimony as intent evidence and erred as a matter of law by admitting Claire's testimony as opportunity evidence. Thus, I would reverse Schmidt's conviction of gross sexual imposition and remand the matter to the trial court for further proceedings.

{¶114} With regard and respect for my colleagues in the majority, I dissent.